**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Jenna L. Gavenman (State Bar No. 348510)
Joshua R. Wilner (State Bar No. 353949)
Joshua B. Glatt (State Bar No. 354064)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
         jgavenman@bursor.com
         jwilner@bursor.com
         jglatt@bursor.com

**SINDERBRAND LAW GROUP, P.C.**
Greg Sinderbrand (State Bar No. 179586)
5805 Sepulveda Blvd. #801
Sherman Oaks, CA 91403
Telephone: (818) 370-3912
E-mail: greg@sinderbrandlaw.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID FONTAN, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | <u>JURY TRIAL DEMANDED</u> |
| PROJECT E BEAUTY, LLC, | |
| Defendant. | |

Plaintiff David Fontan ("Plaintiff") brings this action on behalf of himself, and all others similarly situated against Project E Beauty, LLC ( "Project E" or "Defendant").  Plaintiff makes the following allegations pursuant to investigation of his counsel and based upon information and belief, except as to allegations specifically pertaining to himself, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      This is a putative class action lawsuit on behalf of purchasers of the Project E Skin Rejuvenation Photon Mask (the "Product" or "Mask").[1]  Defendant markets and sells the Mask, a LED[2] light therapy device that purportedly treats various skin conditions:



*Figure 1*

---

[1] Plaintiff reserves the right to include other substantially similar light therapy masks sold and marketed by Defendant, should further investigation demonstrate that they fall within the scope of the allegations in this complaint.

[2] LED stands for light-emitting diode, which is a semiconductor device that emits light when an electric current passes through it.  *See* "Learn About LED Lighting," *available at* https://www.energystar.gov/products/light_bulbs/learn-about-led-lighting (last accessed Mar. 28, 2024).

2.       Defendant markets and sells the Mask in multiple distribution channels, including but not limited to the Project E Beauty website (projectbeauty.com), Amazon, and Walmart.

3.       LED light therapy works by repetitively exposing your skin to low levels of LED light for a certain period of time.  The Mask offers consumers an easy way to expose facial skin to LED light, as consumers simply have to power on the Mask and wear it for a certain amount of time.

4.       LED light therapy is commonly used by dermatologists and estheticians to treat a range of skin issues, such as eczema, mild to moderate acne, psoriasis, rosacea, sun damage, wounds, and wrinkles.[3]  While LED light therapy can be effective when done by a professional, at-home devices are typically weaker than professional equipment, and thus don't produce dramatic anti-aging or acne-reducing results.[4]  Defendant's Mask is one such at-home device.

5.       The Mask features multiple skin-therapy light colors, "backed by science" and marketed as capable of "improv[ing] sensitive skin" and "stimulat[ing] skin cells to execrete [sic] collagen to firm and smooth texture" thereby providing "[a]nti-[a]ging [w]rikle" treatments.[5]

6.       However, according to the Defendant's FDA filing for the Product, the mask has an effective power density value for red light of 1.07 mW/cm$^2$ and an effective power density value for blue light of 1.75 mW/cm$^2$.[6]  Unfortunately for consumers buying the Product for its advertised purpose, researchers have found that LED therapies require power densities between 6-40 mW/cm$^2$ and 8-80 mW/cm$^2$ to provide rejuvenation benefits.[7]

---

[3] *See* Cleavland Clinic, "LED Light Therapy," *available at* https://my.clevelandclinic.org/health/treatments/22146-led-light-therapy (Dec. 2, 2021).

[4] *Id.*

[5] Amazon.com, *Project E Beauty Skin Rejuvenation Photo Mask | LED Face Mask Light Therapy Red Blue Light Anti-Aging Wrinkle Spa Facial Treatment Home Skincare Mask*, available at https://www.amazon.com/Project-Beauty-Photon-Rejuvenation-Therapy/dp/B06Y29W677/ref=sr_1_1_sspa?crid=39RIY4E7Q7RQB&keywords=Project+E+Beauty+Light+therapy+mask&qid=1702419465&sprefix=project+e+beauty+light+therapy+mask%2Caps%2C148&sr=8-1-spons&sp_csd=d2lkZ2V0TmFtZT1zcF9hdGY&psc=1 (last accessed Mar. 21, 2024).

[6] Letter from the FDA re: Project E Beauty LED Light Therapy Mask (Model PE730), Mar. 23, 2022, *available at* https://www.accessdata.fda.gov/cdrh_docs/pdf21/K214101.pdf.

[7] Marc Cohen, et al, *Home-based devices in dermatology: a systemic review of safety and efficacy*, 314(3) ARCH. DERMATOL. RES. 239-246 (May 2021).

---

7.      As such, and contrary to Defendant's representations and warranties, the Mask is not capable of providing the skin rejuvenating benefits that it purports to provide, as its power density output is too low to be effective.  Accordingly, Defendant has engaged in widespread false and deceptive advertising concerning the warranted skin-benefits of the Mask.

8.      Indeed, Defendant prominently advertises the Mask's purported capabilities.  As shown below, Defendant assures purchasers that the Mask will "mak[e] sure face wrinkles, [and] rough skin are reduced" on the front panel of the Product box:

The Photon LED Skincare Facial Mask makes use of a colored LED light that can treat varieties of skin issues and refreshes the skin making sure face wrinkles, rough skin are reduced. And this LED lights come in three different colors so you can choose the color you love or prefer to use.

YOUR PHOTON LED THERAPY

*Figure 2*

9.      The side panel of the Product box further emphasizes its supposed efficacy by assuring purchasers that "[u]nlike other skin beauty devices, this mask is a high-quality LED treatment and has been scientifically validated to give you effective results."

Unlike other skin beauty devices, this mask is a high-quality LED treatment and has been scientifically validated to give you effective results.

*Figure 3*

10.      Plaintiff and the members of the Classes who purchased the Product did so relying on Defendant's claims that the LED light therapies inside the mask provided the warranted skin benefits that their own FDA filings suggest it could not.  Plaintiff and the members of the Classes would not have purchased the Product—or would not have paid as much to purchase it—had they known that it was, in fact, not capable of producing the power density output necessary to elicit the promised skin rejuvenating effects.  Plaintiff and the members of the Classes thus suffered monetary damages as a result of Defendant's false and deceptive representations and omissions.

1         11.    As a result, Plaintiff brings these claims against Defendant individually and on

2    behalf of a Nationwide Class and California Subclass of all others similarly situated for (1)

3    violation of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq;* (2)

4    violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (3)

5    violation of California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*; (4)

6    Breach of Express Warranty; (5) Breach of Implied Warranty; and (6) Unjust Enrichment.

7    **PARTIES**

8         12.    Plaintiff David Fontan is a citizen of California residing in Pleasant Hill, California.

9    In 2022, Plaintiff purchased the Skin Rejuvenation LED Therapy Photon Mask from Amazon.com.

10   Prior to his purchase, Mr. Fontan reviewed the warranties and representations made by Project E

11   on its sales page and understood those representations and warranties to mean that the Product was

12   capable of providing anti-aging therapy by reducing wrinkles and dark spots, relieving

13   inflammation, and brightening skin.  Even though Mr. Fontan used the Mask as directed, he did not

14   achieve the skin rejuvenation results Defendant promised.

15        13.    Project E Beauty, LLC., is a Delaware Corporation with its principal place of

16   business in Delaware.  Project E manufacturers, sells, markets, and/or distributes LED therapy

17   masks.  Project E manufactured, marketed, and sold Skin Rejuvenation LED Therapy Photon

18   Masks during the class period.  Accordingly, the acts and practices giving rise to this action were

19   developed in, and emanated from, Project E Beauty, LLC.

20   **JURISDICTION AND VENUE**

21        14.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), as

22   modified by the Class Action Fairness Act of 2005 ("CAFA"), because at least one member of the

23   Class, as defined below, is a citizen of a different state than a Defendant, there are more than 100

24   class members, and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of

25   interests and costs.

26        15.    This Court has personal jurisdiction over Defendant because a substantial portion of

27   the events giving rise to Plaintiff's claims occurred in this District, including Plaintiff's purchase of

28

Defendant's product and Defendant purposefully availed itself to the benefits of this District by directing its advertising and product sales to this District.

16.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District.  In addition, Plaintiff resides in this District and purchased the Product online in this District.

## FACTUAL ALLEGATIONS

### A.    Background on Red Light Therapy Devices

17.    The use of LED lighting on cell tissue dates back to the 1990s when NASA began studying LED light's ability to help wounded astronauts grow cells and tissue to stimulate healing.[8]

18.    Modernly, LED therapy has been appropriated for, among other uses, skin therapy in consumer products.  In fact, at-home anti-aging and acne treating LED light therapy device sales are a lucrative business in the United States.  The U.S. LED light facemask market in 2020 was estimated to be worth $70.6 million and is expected to grow by almost 12% by 2030.[9]

19.    Though often referred to generally as Red-Light Therapy devices, LED therapy products offer different light color settings, which impact skin differently.  For example, "[b]lue light affects the uppermost layer of [the] skin," while both yellow light and red light penetrates deeper into skin.[10]  Red light "is designed to increase circulation and stimulate collagen, making it useful for people who are looking to reduce the appearance of lines and wrinkles. … On the other hand, blue light targets bacteria that causes acne."[11]  Yellow light is intended to reduce redness and green light is intended to reduce pigmentation.[12]

---

[8] Cleveland Clinic, *supra* note 3.

[9] Grand View Research, *LED Light Face Mask Market Size, Share & Trend Analysis Report by Type (Red & Blue LED, Near Infrared LED, Amber LED), by Application (Anti-Aging, Acne Treatment), By Distribution Channel, By Region, and Segment Forecasts, 2022-2030*, *available at* https://www.grandviewresearch.com/industry-analysis/led-light-face-mask-report (last accessed Mar. 21, 2024).

[10] Cleveland Clinic, *supra* note 3.

[11] Jessica Migala, *Do LED Light Masks Really Work?* EVERYDAY HEALTH (Dec. 7, 2023) *available* https://www.everydayhealth.com/skin-beauty/do-led-light-masks-really-work/ (last accessed Mar. 21, 2024).

[12] *Id.*

20.     LED therapy masks are designed to treat a variety of skin conditions including eczema, hair loss, acne, psoriasis, spotting, rosacea, sun damage, wounds, and wrinkles.[13]

21.     Although there are many varieties of LED therapy masks, "[t]he red and blue LED segment is anticipated to register the fastest [compound annual growth rate]" in the LED mask industry.[14]

22.     The LED face mask market consists primarily of sales to in-office clinics like dermatology offices, and at-home devices but, as the Cleveland Clinic warns, "[t]o see improvement in [the user's] skin, [] you need to have regular treatments" and notes that "[i]n-office LED light therapy uses more powerful strengths than at-home devices, which makes it more effective.  With LED masks and other portable devices, [the user] likely won't see dramatic anti-aging or acne-reducing results. [The user] *might* experience subtle improvements in [their] skin's appearance, though."[15]

23.     In fact, the efficacy of LED light devices remains questionable as demonstrated by the split in researchers' conclusions.[16]  As explained by Harvard Medical School, "[t]here is some evidence they work, but it's far from conclusive."[17]

24.     Unfortunately for consumers, the already reduced chance of seeing their paid-for skin rejuvenation benefits promised by Defendant's at-home device, are dashed by the fact that the rejuvenation mask does not produce the necessary power density output to elicit the warranted skin benefits.  Researchers recommend a minimum power density for red light therapy of 8 mW/cm$^2$

---

[13] Cleveland Clinic, *supra* note 3.

[14] Grand View Research, *supra* note 9.

[15] Cleveland Clinic, *supra* note 3 (emphasis added).

[16] *Compare* Anna Mae Scott, et al., *Blue-Light Therapy for Acne Vulgaris: A Systematic Review and Meta-Analysis*, 17(6) ANNALS OF FAM. MED. (Nov. 2019) *available at* https://doi.org/ 10.1370/afm.2445 (expressing skepticism after reviewing 14 separate blue-light therapy trials) and Marc Cohen, et al, *Home-based devices in dermatology: a systemic review of safety and efficacy*, 314(3) ARCH. DERMATOL. RES. 239-246 (May 2021) (recommending blue light and red-light treatment for acne at power densities "of 6-40 mW/cm$^2$ and 8-80 mW/cm$^2$, respectively.").

[17] Harvard Health Publishing, *LED Lights: Are They a Cure for Your Skin Woes?*, HARV. MED. SCHOOL (Oct. 1, 2019) *available at* https://www.health.harvard.edu/diseases-and-conditions/led-lights-are-they-a-cure-for-your-skin-woes (last accessed Mar. 21, 2024).

---

and a minimum power density for blue light therapy of 6 mW/cm$^2$, even if the nanometer length of the respective light waves is within the correct range.[18]

**B.    Defendant's LED Therapy Device**

25.    Defendant manufactures, markets, and sells the Project E Beauty Skin Rejuvenation Photon Mask.  The Mask is advertised as a "UV-free," "tried and tested skin treatment"[19] offering "7 light energy colors with different skin benefits … [including] enhanced collagen production, reduced wrinkles, improved skin tone and brightness, and so much more!"[20]

26.    To use, the Mask connects to a power source and is placed on the user's face:



*Figure 4*

27.    The bulbs inside the Mask light up pursuant to the color the user selects:

 

*Figure 5*

---

[18] Marc Cohen, et al, *Home-based devices in dermatology: a systemic review of safety and efficacy*, 314(3) Arch. Dermatol. Res. 239-246 (May 2021).

[19] Amazon, *supra* note 5.

[20] *Id*.

28.     The user is instructed to use the Mask "4 times a week, for 10 minutes per session" and to "[g]radually increase for up to 15 minutes of usage as [the] skin gets used to the light therapy."[21]

29.     Defendant's Mask offers blue light for "excellent effect of beauty, [and to] improve sensitive skin," red light to "[s]timulate skin cells to execrete [sic] collagen to firm and smooth texture," green light to provide "anti-aging [and] smooth wrinkle[s] and fine lines," cyan light for "inflammation skin mitigation," yellow light to "fade dark spots, freckles, and blemishes," purple light to "improve lymph metabolism [and] microcirculation," and "white-mix" for "relaxing [and] restoring a younger and healthier skin."[22]

30.     However, neither Defendant's red-light option nor blue light option is capable of delivering the promised results.  Although Defendant guarantees 460 nanometers of blue light wavelength and 630 nanometers of red-light wavelength, these wavelengths are not enough.  This is because the lights' wavelengths must be accompanied by a sufficiently high power density to be able to penetrate skin.

31.     Power density refers to the maximum amount of energy that can be discharged per battery unit in a given unit of time; batteries with a high power density are able to release a lot of energy quickly.[23]  For LED light therapy to be effective, the device must have a power density value high enough to power the LEDs with enough energy for the duration of the treatment.[24]

32.     According to Defendant's **own** FDA filing, the Product has an energy level output for its red light of 1.07 mW/cm$^2$ and a blue light power output of 1.75 mW/cm$^2$.[25]  Accordingly, Defendant's own data shows that its power output is, at a minimum, approximately **7.5 times below the minimum threshold for LED red light therapy effectiveness and approximately 3.5 times below the minimum threshold for LED blue light therapy effectiveness.**

---

[21] *Id.*

[22] *Id.*

[23] Polinovel, *Energy Density vs Power Density: What's Their Differences?*, *available at* https://www.polinovelgroup.com/energy-density-vs-power-density-differences/ (last accessed Mar. 28, 2024).

[24] *See* Cohen, *supra* note 7.

[25] Letter from the FDA, *supra* note 6 at 3.

33.     Additional scientific research suggests that the above-cited minimum threshold levels, which themselves are many times higher than the power density output of Defendant's Mask, may even be too low to achieve skin rejuvenation benefits.  For example, one study explained "[t]he wavelength of the UV-free blue light used … is typically in the 400 to 500 mm range, with a power density of 40 to 630 mW/cm$^2$."[26]  This range is **approximately 23-360 times higher than the Product's blue light power output**.

34.     As such, the Product is not capable of producing the power output necessary for its red and blue light LED therapy settings to penetrate the skin deep enough to cause any of its promised benefits consumers, like Plaintiff, relied on when purchasing the Product.

35.     To make matters worse, Defendant's advertising is all over the internet, making claims through its website, Amazon page, and an army of "influencers" that its product can work wonders, featuring before and after images, and promising unsuspecting consumers "real results."



*Figure 6*

//

//

//

//

//

//

---

[26] Hong Bae Kim, et. al., *Integration of blue light with near-infrared irradiation accelerates the osteogenic differentiation of human dental pulp stem cells*, J PHOTOCHEM AND PHOTOBIO. (Aug. 2023), available at https://pubmed.ncbi.nlm.nih.gov/37451155/ (last accessed Feb. 1, 2024).

1
2
3
4
5
6
7



8

**Figure 7**

9
10



11
12
13
14
15
16
17
18
19
20

**Figure 8**

36.      Defendant attempts to inject credibility into its marketing by representing to consumers that the Product is trusted by thousands, "influencer"-endorsed, and features side-by-side before-and-after photos of models.

37.      In fact, the images that Defendant relies on to show unsuspecting consumers the "benefits" of the Product may also demonstrate that Defendant is aware that the Product is not capable of producing the anti-wrinkle results it promises.  Instead of using a true before-and-after image in its marketing, the side-by-side photo meant to demonstrate the anti-aging effect Defendant prominently displays, shows remarkably similar facial settings for someone who,

according to Defendant's own use instructions, would not see anti-aging benefits before the fourth time the mask was applied to the face.  However, a closer look at the photos show that the "before" and "after" are the same image, while associating it with a review from "Jennifer Edwards," a "verified customer."



*Figure 9*

38.     Upon closer look, the model's face was likely never touched by the mask, nor were these images taken in different, pre-and-post-application sessions.  For example, her eyelashes are in the *exact same* position "before" use and "after" use, while the reflection from surrounding light is in exactly the same place and position in both:

 

**"Before"**                    *Figure 10*                    **"After"**

39.     Had the model *actually* used the Product four times, as demonstrated by the user in Figure 5, the mask would have likely brushed or impacted the model's eye lashes.  Moreover, using the device as directed, four times for 10 minutes each, means that these photos would have had to have been taken not sooner than 40 minutes apart.  This means that, if this photo was a true before-and-after, the model would have to, remarkably, stand in the *exact* position she did in the

first image so as to cause the glare in her eye to be in the *exact* same position and *exact* same head angle as the first image.  This cannot possibly be so.  As such, Defendant uses a doctored version of the same "before" photo as their "after" photo.  As such, Defendant cannot even show its consumers a true before-and-after image of the effect of the Mask.

40.      Accordingly, through Defendant's pervasive advertising, Defendant markets the Product to consumers as offering skin benefits that it is not actually capable of providing.

### CLASS ALLEGATIONS

41.      Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

42.      Plaintiff seeks to represent a class defined as:

> All persons in the United States who, within the applicable limitations period purchased the Product (the "Nationwide Class").

43.      Plaintiff also seeks to represent a class defined as:

> All persons in California who, within the applicable limitations period, purchased the Product (the "California Subclass").

44.      Specifically excluded from the class are Defendant, Defendant's officers, directors, agents, trustees, parents, children, corporations, trust, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendant, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or Defendant's officers and/or directors, the judge assigned to this action, any member of the judge's family and staff, Defendant's counsel or Plaintiff's counsel.

45.      Subject to additional information obtained through further investigation and discovery, the foregoing definitions of the Class and California Subclass (collectively, the "Classes") may expand or narrow by amended complaint or amendment.

46.      **Numerosity.**  The Class and California Subclass Members are so numerous that individual joinder of each member is impracticable.  Upon information and belief, Plaintiff reasonably estimates that there are thousands of members of the Classes.  Although the precise

number of members of the Classes is unknown to Plaintiff, it may be determined through discovery.

47.     **Commonality.**  Common questions of law and fact exist as to all Members of the Classes and predominate over any questions affecting only individual Nationwide Class or California Subclass members.  The common legal and factual questions include, but are not limited to:

(a) Whether Defendant made false and/or misleading statements to the public concerning the efficacy of the Product;

(b) Whether Defendant's Product contains the required power density to produce the results Defendant warrants;

(c) Whether Defendant omitted material information to the consuming public concerning the actual wrinkle-reducing and corrective capabilities of the Product;

(d) Whether Defendant's representations and partial representations were material to consumers;

(e) Whether Defendant's representations and partial representations concerning the capabilities of the Product were likely to deceive a reasonable consumer;

(f) Whether Defendant's omissions concerning the capabilities of the Product were likely to deceive a reasonable consumer;

(g) Whether Defendant advertised the Product with intent not to sell as advertised;

(h) Whether Defendant made and breached express and/or implied warranties to Plaintiff and the Classes concerning the Product's capabilities;

(i) Whether Defendant's representations, omissions, and/or breaches caused injury to Plaintiff and the Classes;

(j) Whether Plaintiff and the Classes are entitled to damages.

48.     **Typicality.**  Plaintiff's claims are typical of the claims of the Members of the Classes in that members of the Classes were deceived (or reasonably likely to be deceived) in the same way by Defendant's false and misleading advertising claims about the regenerative skin benefit capabilities of the Product.  All members of the Classes were comparably injured by Defendant's wrongful conduct as set forth herein.  Further, there are no defenses available to Defendant that are unique to Plaintiff.

49.     **Adequacy.**  Plaintiff will fairly and adequately protect the interests of the Members of the Classes.  Plaintiff has retained counsel that is highly experienced in complex consumer class

action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Classes. Furthermore, Plaintiff has no interests that are antagonistic to those of the Classes.

50.     **Predominance.**  Pursuant to Rule 23(b), the common issues of law and fact identified above predominate over any other questions affecting only individual Members of the Classes.  Issues affecting the Nationwide Class and California Subclass fully predominate over any individual issues because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and labeling practices.

51.     **Superiority.**  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual members of the Classes are relatively small compared to the burden and expense of individual litigation of their claims against Defendant.  It would thus be virtually impossible for the members of the Classes to obtain effective redress on an individual basis for the wrongs committed against them.  Even if members of the Classes could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgements arising from the same set of facts.  It would also increase the delay and expense to all parties and the court system from the issues raised by this action.  A class action provides the benefits of adjudication of those issues on a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties.

## CAUSES OF ACTION

### COUNT I
**Violation of California's Consumers Legal Remedies Act ("CLRA")**
**Cal. Civ. Code § 1750, *et seq.***
**(On Behalf of the California Subclass)**

52.     Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in the preceding paragraphs of this complaint.

53.     Plaintiff brings this claim individually and on behalf of the Members of the California Subclass against Defendant.

54.     Plaintiff and other member of the California Subclass are "consumers" within the meaning of Cal. Civ. Code § 1761(d).  By purchasing Defendant's Product, Plaintiff and the

1  Members of the California Subclass engaged in "transactions" within the meaning of Cal. Civ.

2  Code § 1761(e) and 1770.

3       55.    Defendant is a "person" within the meaning of Cal. Civ. Code § 1761(c).

4  Defendant's Product is a "good" within the meaning of Cal. Civ. Code § 1761(a).

5       56.    Defendant's unfair and deceptive business practices, as alleged above and herein,

6  were intended to, and did result in, the sale of the Product.

7       57.    As a direct and proximate result of Defendant's unfair and deceptive business

8  practices, as alleged above and herein, Plaintiff and the California Subclass Members suffered

9  injury and damages in an amount to be determined at trial.

10      58.    Defendant violated California's Consumers Legal Remedies Act (the "CLRA") by

11  engaging in the following unfair and deceptive business practices as alleged above and herein:

12          (a) Defendant violated Cal. Civ. Code § 1770(a)(5) by representing that the Product

13              has characteristics it does not have.

14          (b) Defendant violated Cal. Civ. Code § 1770(a)(7) by representing that the Product

15              is of a particular standard and quality despite being of another.

16          (c) Defendant violated Cal. Civ. Code § 1770(a)(9) by advertising the Product with

17              the intent not to sell as advertised.

18      59.    The CLRA was enacted to protect consumers against such practices.  The CLRA

19  applies to Defendant's conduct because the statute covers all sales of goods to consumers.

20      60.    On information and belief, Defendant's unfair and deceptive business practices, as

21  alleged above and herein, were willful, wanton, and fraudulent.

22      61.    On information and belief, Defendant's officers, directors, and/or managing agents

23  authorized the use of misleading statements and material omissions regarding the Product's

24  purported benefits as alleged herein.

25      62.    On or around, but not later than, February 15, 2024, prior to filing this complaint,

26  Plaintiff's counsel sent Defendant a CLRA notice letter, which complies in all respects with

27  California Civil Code § 1782(a).  The letter was sent via certified mail, return receipt requested,

28  advising Defendant that it was in violation of the CLRA and demanding that it cease and desist

from such violations and make full restitution by refunding the monies received therefrom.  The letter stated that it was sent on behalf of Plaintiff and all other similarly situated purchasers. Defendant has not taken corrective action.

63.     Plaintiff and California Subclass Members seek actual and punitive damages, restitution, reasonable costs and attorneys' fees, and to enjoin the unlawful acts and practices described herein pursuant to Cal. Civ. Code § 1780.

## COUNT II
### Violation of California's Consumers Unfair Competition Law ("UCL")
### Cal. Bus. & Prof. Code § 17200, *et seq.*
### (On behalf of the California Subclass)

64.     Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

65.     Plaintiff brings this claim individuals and on behalf of the members of the California Subclass against Defendant.

66.     Defendant violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§17200-17210, by engaging in unfair, fraudulent, and unlawful business practices.

67.     Plaintiff has standing to pursue this claim because he suffered an injury-in-fact and lost money or property as a result of Defendant's unlawful, unfair, and fraudulent conduct. Specifically, Plaintiff purchased the Product for his own personal use.  In so doing, Plaintiff relied upon Defendant's false representations that the Product was capable of reducing wrinkles and provided other skin regenerative benefits.  Plaintiff spent money in the transaction that she otherwise would not have spent had he known the truth about Defendant's advertising claims.

*"Unfair" Prong of the UCL*

68.     A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical oppressive, unscrupulous, or substantially injurious to consumers.  That unfairness is determined by weighing the reasons, justifications, and motives for the business act or practice against the gravity of the harm alleged.

69.     Defendant's conduct constitutes an "unfair" business practice because, as alleged herein, Defendant has engaged, and continues to engage, in a false, misleading, and deceptive

1   advertising campaigns that mislead consumers into believing that the Product they purchased will

2   reduce wrinkles and provide additional skin-regenerative benefits despite having a power density

3   output not capable of producing those results.

4   70.     Defendant's conduct, as alleged above and herein, was not motivated by any

5   legitimate business or economic need or rationale, other than to maximize its revenue and the

6   expense of consumers who sought skin regenerative benefits.  No legitimate reasons, justifications,

7   or motives outweigh the harm and adverse impact of Defendant's conduct on members of the

8   general consuming public.  Defendant engaged, and continues to engage in, such conduct solely to

9   wrongfully extract monies from reasonable consumers seeking skin regenerative benefits,

10  including Plaintiff, to which Defendant is not entitled.  Defendant could have, but has not, used

11  alternative means of effecting their legitimate business needs, such as by properly disclosing the

12  power density and by omitting the rejuvenation claims entirely or discounting the Product to

13  appropriately account for the Product's functionality.

14  71.     Defendant's conduct harms consumers and hurts market competition.  Defendant's

15  conduct, as alleged herein, is immoral, unethical, oppressive, unscrupulous, unconscionable, and/or

16  substantially injurious to Plaintiff and Members of the California Subclass because it violates

17  consumers' reasonable expectations.  If Defendant had advertised its Product in a non-misleading

18  fashion, Plaintiff and other California Subclass Members could have considered other options for

19  purchasing red light therapy devices.

20  ***"Fraudulent" Prong of the UCL***

21  72.     A business act or practice is "fraudulent" under the UCL if it is likely to deceive

22  members of the consuming public.

23  73.     Defendant has engaged, and continues to engage, in fraudulent business practices by

24  knowingly representing to consumers that the Product they purchase will provide them with skin-

25  regenerative benefits when it does not.  Defendant's conduct deceived Plaintiff and California

26  Subclass Members who purchased the Product in reliance on Defendant's skin benefit claims and is

27  highly likely to deceive members of the consuming public because, as alleged above, it violates

28  consumers' reasonable expectations regarding skin rejuvenation.  Such a business practice lacks

utility and functions only to maximize Defendant's profits at the expense of its customers. The gravity of the harm to Plaintiff and other California Subclass Members, who lost money or property by paying for the Product, far outweighs the benefit to Defendant's conduct.

74.     Further, Defendant's fraudulent business practices will continue to mislead consumers because it will be impossible for consumers to know whether Defendant has stopped misrepresenting the functionality of the Product as it concerns its purported skin benefits. Accordingly, the risk of harm to Plaintiff, members of the California Subclass, and the consuming public, is ongoing.

### *"Unlawful" Prong of the UCL*

75.     A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

76.     Defendant's business practices as alleged herein constitute violations of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* (the "CLRA"). Specifically, Defendant has unlawfully marketed and advertised its Product in violation of Cal. Civ. Code §§ 1770(a)(5), 1770(a)(7), and 1770(a)(9), as detailed above.

77.     Defendant's business practices also constitute violations of California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et. seq.* (the "FAL"), as described below.

78.     Defendant's unfair, fraudulent, and unlawful business practices, as enumerated and explained above and below, were the direct and proximate cause of financial injury to Plaintiff and other members of the California Subclass. Defendant has unjustly benefited as a result of its wrongful conduct. Accordingly, Plaintiff and the California Subclass seek an order of this Court that includes, but is not limited to, requiring Defendant to: (a) provide restitution to Plaintiff and the California Subclass; (b) disgorge all revenues obtained as a result of its violations of the UCL; (c); and pay attorneys' fees and costs for Plaintiff and the California Subclass.

1
2
3

**COUNT III**
**Violation of California's False Advertising Law**
**Cal. Bus. & Prof. Code §§ 17500, *et. seq.***
**(On Behalf of the California Subclass)**

4        79.       Plaintiff hereby incorporates by reference and re-alleges herein the allegations

5    contained in all preceding paragraphs of this complaint.

6        80.       Plaintiff brings this claim individually and on behalf of the California Subclass

7    Members against Defendant.

8        81.       Defendant violated California's False Advertising Law ("FAL"), Cal. Bus. & Prof

9    Code §§ 17500, *et. seq.,* by publicly disseminating false, misleading, and/or unsubstantiated

10   advertisements regarding its Product, as alleged above and herein.

11       82.       Plaintiff has standing to pursue this claim because he suffered an injury-in-fact and

12   has lost money or property as a result of Defendant's false advertising.  Specifically, Plaintiff

13   purchased the Product for his personal use.  In so doing, Plaintiff relied on Defendant's false and

14   misleading representations regarding the Product's capability to deliver wrinkle reducing and other

15   skin rejuvenation claims.  Plaintiff spent money in the transaction that he otherwise would not have

16   spent had he known the truth about Defendant's claims.

17       83.       Defendant disseminated false and misleading advertisements to increase the sales of

18   the Product.

19       84.       Defendant knew or should have known that the advertisements for its Product were

20   false and/or misleading.

21       85.       Defendant knew or should have known that consumers, including Plaintiff and other

22   members of the California Subclass, would believe that the Product was capable of providing the

23   promised skin rejuvenation benefits.

24       86.       Plaintiff and the California Subclass Members have suffered harm as a result of

25   Defendant's violations of the FAL because they paid monies for the Product that they would not

26   have purchased but for Defendant's false and misleading advertisements.

27       87.       Accordingly, Plaintiff and members of the California Subclass seek an order of this

28   Court that include, but is not limited to, requiring Defendant to: (a) provide restitution of Plaintiff

and other California Subclass Members; (b) disgorge all revenues obtained as a result of its violations of the FAL; and (c) pay attorneys' fees and costs for Plaintiff and the California Subclass.

## COUNT IV
**Breach of Express Warranty**
**(On Behalf of the Nationwide Class and California Subclass)**

88.     Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all proceeding paragraphs of this complaint.

89.     Plaintiff brings this action individually and on behalf of Members of the Nationwide Class and California Subclass against Defendant.

90.     Plaintiff brings this claim under California law.

91.     As the designer, manufacturer, marketer, distributor, and/or seller of the Product, Defendant issued an express warranty by representing to consumers that the Product would provide skin rejuvenation benefits when it does not possess the power density output capable of producing such results.

92.     Defendant's representations were part of the basis of the bargain upon which the goods were offered for sale and purchased by Plaintiff and members of the Classes.

93.     As a direct and proximate result of Defendant's breach, Plaintiff and Members of the Class and California Subclass were injured because they: (1) paid money for the Product that was not what Defendant represented; (2) were deprived of the benefit of the bargain because the Product they purchased was different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the Product they purchased had less value than Defendant represented.  Had Defendant not breached the express warranty by making the false representations alleged herein, Plaintiff and Class and California Subclass Members would not have purchased the Product or would not have paid as much as they did for them.

## COUNT V
**Breach of Implied Warranty**
**(On Behalf of the Nationwide Class and California Subclass)**

94.     Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

95.     Plaintiff brings this claim individually and on behalf of the members of the Nationwide Class and California Subclass.

96.     Plaintiff brings this claim under California law.

97.     Defendant routinely engages in the manufacture, distribution, and/or sale of the Product and is a merchant that deals in such goods or otherwise holds itself out as having knowledge or skill particular to the practices and goods involved.

98.     Plaintiff and Members of the Nationwide Class and California Subclass were consumers who purchased Defendant's Product for the ordinary purpose of such products.  In the alternative, Defendant marketed the Product, and Plaintiff and Members of the Classes purchased the Product, for the specific purpose of using the skin regenerative feature enabled through LED Red and Blue Light therapy, but received far less because the Product is incapable of providing such skin benefits.

99.     By representing that the Product would work, Defendant impliedly warranted to consumers that the Product was merchantable, such that they it was of the same average grade, quality, and value as similar goods sold under similar circumstances.

100.     However, the Product was not of the same average grade, quality, and value as similar goods sold under similar circumstances.  Thus, it was not merchantable and, as such, would not pass without objection in the trade or industry under the contract description.

101.     As a direct and proximate result of Defendant's breach, Plaintiff and Members of the Nationwide Class and California Subclass were injured because they paid money for the Product that would not pass without objection in the trade or industry under the contract description.

## COUNT VI
### Unjust Enrichment
### (On Behalf of the Nationwide Class and California Subclass)

102.     Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

103.     Plaintiff brings this claim individually and on behalf of the Nationwide Class and California Subclass.

---

104.    Plaintiff brings this claim under California law.

105.    To the extent required by law, this cause of action is alleged in the alternative to legal claims, as permitted by Fed. R. Civ. P. 8.

106.    Plaintiff and the Nationwide Class and California Subclass Members conferred benefits on Defendant by purchasing the Product.

107.    Defendant was unjustly enriched in retaining the revenues derived from Plaintiff and the members of the Classes who purchased the Product.  Retention of these monies under these circumstances is unjust and inequitable because Defendant failed to disclose that the Product was not capable of producing the wrinkle reducing and skin rejuvenation benefits promised by its Red and Blue light therapies because it does not operate with the required power density output to produce such results, rending the Product unfit for its intended, marketed purpose.  Those omissions caused injuries to Plaintiff and members of the Classes because they would not have purchased the Product had they known the true capabilities of the Product.

108.    Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and the members of the Classes is unjust and inequitable, Defendant has been unjustly enriched in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgement against Defendant as follows:

    (a)    Certifying the Nationwide Class and California Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Nationwide Class and California Subclass;

    (b)    Appointing Plaintiff's counsel to represent the Nationwide Class and California Subclass;

    (c)    Declaring that Defendant's conduct violated the statutes and common law referenced herein;

    (d)    Finding in favor of Plaintiff, the Nationwide Class, and California Subclass against Defendant on all counts asserted herein;

1       (e)    Ordering Defendant to disgorge and make restitution of all monies
2                Defendant acquired by means of the unlawful practices as set forth herein;

3       (f)    Awarding declaratory and injunctive relief as permitted by law or equity,
              including: enjoining Defendant from continuing its unlawful practices as set
4                forth herein, directing Defendant to identify, with Court supervision, victims
5                of its conduct and pay them all money they are required to pay;

6       (g)    Awarding Plaintiff, the Nationwide Class, and California Subclass Members
              their costs and expenses incurred in the action, including reasonable
7                attorneys' fees.

8       (h)    Ordering Defendant to pay pre-judgment interest on all amounts awarded;

9       (i)    Providing such further relief as may be just and proper.

10 **<u>JURY TRIAL DEMANDED</u>**

11     Plaintiff demands a trial by jury on all claims so triable.

12 Dated:  April 11, 2024                **BURSOR & FISHER, P.A**.

13                                 By:    _/s/ L. Timothy Fisher_
14                                      L. Timothy Fisher

15                 L. Timothy Fisher (State Bar No. 191626)
                Jenna L. Gavenman (State Bar No. 348510)
16                 Joshua R. Wilner (State Bar No. 353949)
                Joshua B. Glatt (State Bar No. 354064)
17                 1990 North California Blvd., Suite 940
18                 Walnut Creek, CA 94596
                Telephone: (925) 300-4455
19                 Facsimile: (925) 407-2700
20                 E-mail: ltfisher@bursor.com
                       jgavenman@bursor.com
21                        jwilner@bursor.com
                       jglatt@bursor.com
22

23                 **SINDERBRAND LAW GROUP, P.C.**
                Greg Sinderbrand (State Bar No. 179586)
24                 5805 Sepulveda Blvd. #801
                Sherman Oaks, CA 91403
25                 Telephone: (818) 370-3912
                E-mail: greg@sinderbrandlaw.com
26

27                 *Attorneys for Plaintiff*

28